AMERICAN GENERAL INSURANCE COMPANY and Fidelity and Deposit Company of Maryland, Plaintiffs,

v.

FEDERAL TRADE COMMISSION et al., Defendants.

Civ. A. No. 73-H-282.

United States District Court,
S. D. Texas,
Houston Division.

June 5, 1973.

Leroy Jeffers, Vinson, Elkins, Searls, Connally & Smith, George F. Reed, Houston, Tex., for American Gen. Ins. Co.

Decatur H. Miller, Pipe & Marbury, Richard F. Ober, Baltimore, Md., for Fidelity and Deposit Co.

Anthony J. P. Farris, U. S. Atty., William L. Bowers, Jr., and James R. Gough, Asst. U. S. Attys., Houston, Tex., Harold D. Rhynedance, Jr., Nicholas S. Reynolds, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Plaintiffs ask the Court in this action for declaratory and injunctive relief, to declare that the Federal Trade Commission is without subject matter jurisdiction to conduct proceedings in connection with In the Matter of American General Insurance Company, FTC Docket 8847, for the reason that the Mc-

Carran-Ferguson Act, 15 U.S.C. § 1011 renders § 7 of the Clayton Act, 15 U.S.C. § 18 inapplicable to the merger of American General Insurance Company and Fidelity and Deposit Company of Maryland. Plaintiffs ask that a preliminary injunction issue against the Federal Trade Commission, its present members, and the administrative law judge involved in the administrative proceedings against Plaintiff American General Insurance Company enjoining them from conducting any further proceeding in FTC Docket No. 8847 until this Court has entered a final judgment determining the merits of this complaint, and that this Court enter a permanent injunction prohibiting Defendants from conducting any further proceedings in FTC Docket No. 8847 and directing Defendants to dismiss the Complaint therein in its entirety.

In response the Defendants have moved the Court to dismiss this action on the grounds that the Court lacks jurisdiction over the subject matter and that the Complaint fails to state a claim upon which relief can be granted. After hearing before the Court and upon the briefs and other papers filed with the Court, the Court makes the following Memorandum Opinion.

## I.

This case has its roots in a merger agreement worked out in 1969 between American General Insurance Company and Fidelity and Deposit Company of Maryland. American General is a Texas corporation with its principal place of business in Houston, Texas. It is primarily a holding company: its subsidiaries include life insurance companies, property-liability insurance companies and financial noninsurance institutions. Fidelity and Deposit is a Maryland corporation with its principal place of business in Baltimore, Maryland. It is engaged in the business of writing property-liability insurance, primarily for commercial customers, and the majority of its writings consist of fidelity and surety bonds.

The merger agreement was submitted to the state insurance authorities of both Maryland and Texas who approved the plan. Subsequent to approval the new company applied for and received licenses to do business in all states where the prior companies had done business.

About June 17, 1971, the Federal Trade Commission issued a complaint alleging that American General had violated Section 7 of the Clayton Act by reason of its merger with Fidelity and Deposit. The basic allegation of the complaint was that the effect of the merger might be to lessen substantially competition or to tend to create a monopoly in the business of underwriting fidelity and surety bonds in the United States and in various states and other geographic markets.

In reply, American General alleged that the Federal Trade Commission lacked jurisdiction to challenge the merger in that the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 renders Section 7 of the Clayton Act, 15 U.S.C. § 18, inapplicable to the merger since the subject matter of the Commission's Complaint involves the business of insurance which is regulated by State law.[1] American General also denied the

---

1. The McCarran-Ferguson Act, 15 U.S.C. § 1012, provides in pertinent part:
 Regulation by State law; Federal law relating specifically to insurance; applicability of certain Federal laws after June 30, 1948.
 a. The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation or such business.

 b. No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically related to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended known as the Sherman Act, and the Act of October 15, 1914, as

principal allegations of the administrative complaint and requested that the complaint be dismissed. Following the intervention of Fidelity and Deposit in the administrative proceedings, plaintiffs filed a motion for summary decision on the jurisdictional ground.

On March 7, 1972, the Commission's administrative law judge issued his initial decision granting the Plaintiffs' motion for summary decision and dismissing the complaint. He held that "the States of Maryland and Texas, and many of the other states, have laws, capable of being enforced, which regulate the business of insurance, within the contemplation and meaning of the McCarran-Ferguson Act," and that therefore "the Federal Trade Commission lacks jurisdiction over the subject matter of the complaint herein."

The Commission counsel supporting the administrative complaint appealed to the whole Commission and after submission of written briefs and oral argument, the Commission vacated and set aside the decision of the administrative law judge and remanded the case for further proceedings. The Commission (per Dennison, C.) held that because of territorial limitations on a state's ability to regulate, neither Texas nor Maryland, the respective domiciliary states of American General and Fidelity and Deposit, nor any other state have regulations effectively reviewing the effects of mergers of national insurance companies on the industry as a whole. The Commission held further that the merger of insurance companies is not included in the "business of insurance," the regula-

tion of which by a state preempts federal jurisdiction under the McCarran-Ferguson Act. Thus, the Commission concluded that it was not preempted by the McCarran-Ferguson Act from challenging the instant merger. Following the Commission's action remanding the case, Plaintiffs filed the suit now pending before this Court.

## II.

Before this Court can consider Plaintiffs' request for injunctive relief, it must first ascertain that it has the jurisdiction necessary to interfere in proceedings currently pending before an administrative agency such as the Federal Trade Commission. Stripped to the core, Plaintiffs' suit becomes an attempt to obtain review in this Court of the jurisdictional determination made by the Federal Trade Commission when it denied Plaintiffs' motion for summary decision. The Plaintiffs contend that such denial amounts to a final ruling within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704,[2] and that it is therefore within the jurisdiction of this Court for review.

The position of the Defendants is that the denial of motion for summary decision is an interlocutory order, not a "final agency action for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and that therefore the Plaintiffs have failed to exhaust available administrative remedies. Defendants maintain that the issue raised in Plaintiffs' complaint is one the determination of which lies exclusively within the jurisdiction of the court of appeals upon a

amended known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

2. 5 U.S.C. § 704 Actions reviewable

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate

agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

petition for review of a final order of the Commission, if indeed any order is ultimately entered against American General at the conclusion of the administrative proceeding. Under Defendants' theory the proper forum for review of a Commission proceeding initiated under Section 7 of the Clayton Act, 15 U.S.C. § 18, is specified in Section 11(c) of the Act, 15 U.S.C. § 21(c), which provides:

> (c) Any person required by such order of the commission . . . to cease and desist from any such violation may obtain a review of such order in the court of appeals of the United States . . . .

Furthermore, the jurisdiction of the Court of Appeals over Commission Clayton Act proceedings is exclusive.[3]

 It is the opinion of this Court that the Plaintiffs, by seeking to obtain equitable relief in this Court are in reality attempting to circumvent the statutory scheme of review and avoid the adjudicatory proceedings of the Commission. It is equally clear that the Supreme Court and this Circuit have repeatedly refused to allow obstructions to the orderly and expeditious operation of the administrative process. E.g., Allen v. Grand Central Aircraft Co., 347 U.S. 535, 74 S.Ct. 745, 98 L.Ed. 933 (1954); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); Bokat v. Tidewater Equipment Co., 363 F.2d 667 (5th Cir. 1966).

 For this Court to have jurisdiction in this case under the Administrative Procedures Act, the action in question must either be one made reviewable by statute or a final agency action for which there is no other adequate remedy in a court. The denial of motion for summary decision in question in this instance is neither of these. In fact, it is analogous to a denial of motion for summary judgment and is therefore most properly characterized as interlocutory. While the Commission's summary determination as to its jurisdiction establishes the law of the case, it is not res judicata. Coffman v. Federal Laboratories, Inc., 171 F.2d 94 (3rd Cir. 1948); 6 Moore's Federal Practice, § 5614(2) at 2258 and 56.20(3–4) at 2759. Certainly a denial of a motion for summary judgment is not a "final decision" as contemplated by 28 U.S.C. § 1291 such as to vest jurisdiction in an appellate forum to review the denial. It is also clear that interlocutory appeal will not lie from a summary interlocutory order which is not made appealable by statute. 6 Moore's Federal Practice § 56.20 (3.–1 at 2747).

Continuing the analogy, it is apparent that many of the considerations which support the final judgment rule with respect to appeals from interlocutory decisions of lower courts are equally applicable to actions by administrative agencies. It may be, for example, that the Commission will find in favor of American General on the merits of the administrative complaint, or that the case will be settled. However, should the Commission issue an order adverse to American General at the conclusion of the pending administrative proceeding, the court of appeals on review would best be able to assess the matter in the context of a completed administrative record. Since the denial of the motion of summary decision is not "final agency action" as contemplated by 5 U.S.C. § 704, this Court must conclude that it has no statutory jurisdiction to review the Commission's order.

The Plaintiffs maintain that a finding of jurisdiction under the Administrative Procedures Act is not essential to their case because jurisdiction is conferred by case law. It is their position that the instant case falls within the narrow exception to the exhaustion doctrine which has been judicially carved by Leedom v.

3. Section 11(d) of the Clayton Act, 15 U.S.C. § 21(d) provides as follows:
(d) Upon the filing of the record with it the jurisdiction of the court of appeals to affirm, enforce, modify, or set aside orders of the commission or board shall be exclusive.

Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L. Ed.2d 210 (1958).

■ In *Kyne*, the National Labor Relations Board in the course of a proceeding resulting in union certification, had grouped professionals with non-professionals in the same bargaining unit without a vote of the professionals. Such action was in defiance of an express statutory prohibition. The Supreme Court sustained jurisdiction in the district court to enjoin the NLRB from depriving some of the affected employees of a substantive right clearly granted to them by statute and from exercising authority clearly in excess of its jurisdiction. Significantly, without the district court's intervention, the deprivation could not have been reviewed pursuant to the statutory review procedures at the instance of the employees whose rights had been obliterated by the NLRB action.

Within the Fifth Circuit, the exception created by Leedom v. Kyne that only "a plain contravention of a statutory mandate" justifies district court interventions has been very narrowly confined to the extreme type of circumstances which resulted in the decision. Boire v. Miami Herald Publishing Co., 343 F.2d 687 (5th Cir. 1965). Furthermore, such a rule has been found applicable to Federal Trade Commission proceedings. Federal Trade Commission v. J. Weingarten, Inc., 336 F.2d 687 (5th Cir. 1964). The Court stated its position most succinctly in United States v. Feaster, 410 F.2d 1354 (5th Cir. 1969):

* * * Leedom v. Kyne represents only a narrow and rarely successfully invoked exception to the doctrine that exhaustion of administrative procedures is a condition precedent to federal court jurisdiction. Under this exception access to the courts is accorded only if the [agency's] determination is infused with error which is of a *summa* or *magna* quality as contraposed to decisions which are simply *cum* error. Only the egregious error melds the [agency's] decision into

justiciability. Lesser malignancies thwart the jurisdiction of the courts (410 F.2d at 1368; citations omitted).

These narrow strictures of the *Kyne* exhaustion exception have been most recently reiterated in the Coca-Cola Co. v. Federal Trade Commission, 475 F.2d 299, 5th Cir., 1973.

■ In the case at hand we do not have the inadequacy of legal remedies which resulted in *Kyne*. The legal question will be subject to review when and if a final order issues from the Federal Trade Commission which Plaintiff would seek to appeal. Nor do we have in this case an assertion of jurisdiction by the Federal Trade Commission in flagrant disregard of their statutory authority as a matter of law on which this Court could ground any interference by it in the orderly process of administrative proceedings. It simply is not clear that the McCarran-Ferguson Act is a complete bar to the ability of the Federal Trade Commission to challenge the mergers of insurance companies under Section 7 of the Clayton Act, 15 U.S.C. § 18. Indeed, federal courts have held in similar situations that the McCarran-Ferguson Act does not preclude federal regulation being applied to the insurance industry. Federal Trade Commission v. Travelers Health Association, 362 U.S. 293, 80 S.Ct. 717, 4 L.Ed.2d 724 (1960); Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); United States v. Chicago Title & Trust Co., 242 F.Supp. 56 (N.D.Ill.E.D.1965). In short, this case just does not fall within the narrow confines of Leedom v. Kyne.

This Court feels that the Plaintiff has an adequate remedy at law, that being review of the final Commission order as provided by the Clayton Act. Such a holding is consistent with the Fifth Circuit's ruling in Frito-Lay, Inc. v. Federal Trade Commission, 380 F.2d 8 (5th Cir. 1967), a case very close to this case on the facts. In that case, the Commission had issued an administra-

tive complaint charging Frito-Lay with violations of Section 7 of the Clayton Act, 15 U.S.C. § 18. Frito-Lay challenged the Commission's jurisdiction to attack its acquisition of or merger with certain other corporations, arguing that it, Frito-Lay, was a "packer" within the meaning of the Packers and Stockyards Act; therefore, its acquisitions or mergers were under the exclusive jurisdiction of the Secretary of Agriculture.[4]

The Fifth Circuit Court of Appeals in affirming the District Court's dismissal of the suit for failure to exhaust administrative remedies observed:

Jurisdiction to review proceedings conducted by the Federal Trade Commission pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, is conferred upon the Courts of Appeals by Section 11(c) of the Act, 15 U.S.C. § 21(c). Section 11(d), 15 U.S.C. § 21(d) makes that jurisdiction exclusive. All constitutional, jurisdictional, substantive, and procedural issues arising in Commission proceedings may be considered in a Section 11(c) appeal, . . . and this statutory right to review has long been viewed as constituting a speedy and adequate remedy at law. Where Congress has provided an adequate procedure for judicial review of administrative actions, that procedure must be followed . . . Judicial intervention without exhaustion of administrative remedies is not justified . . . where as here, the merit of [Plaintiffs'] jurisdictional attack is far from clear, the administrative body may be more qualified than the court to initially consider the jurisdictional question, and the injury sought to be avoided is merely the normal cost of administrative litigation. See Davis, Adminis-

trative Law Text § 20.01–.03 (1959). [380 F.2d at 9; citations omitted.]

Having concluded that there has not yet been any final agency action, that the Federal Trade Commission has not clearly exceeded the bounds of its jurisdiction, and that the Plaintiffs have an adequate remedy at law through review of the final Commission order as provided by the Clayton Act, this Court is compelled to dismiss Plaintiffs' complaint for failure to exhaust administrative remedies.

### III.

Even if this Court were to find that it was within its jurisdiction to review the Federal Trade Commission's exercise of jurisdiction to challenge the American General-Fidelity and Deposit merger, the Court would still be forced to deny Plaintiffs the declaratory and injunctive relief which they seek. As noted before the Plaintiffs have asked this Court to rule that the McCarran-Ferguson Act in terms of the situation at hand means that the regulation of insurance company mergers is to be done by the individual states, and that only in the instance where a state has made no attempt to pass such legislation would the Federal Trade Commission have any jurisdiction to challenge the mergers. The Plaintiffs further maintain that since both Texas and Maryland have anti-trust regulations applicable to mergers, it is beyond the scope of authority of the Federal Trade Commission because of the McCarran-Ferguson Act to challenge such mergers. The Defendants take the position as first advanced in the opinion issued by the Commission denying summary decision on the jurisdictional point, that state regulation of the instant merger could not have extraterri-

4. Packers and Stockyards Act, 7 U.S.C. § 192 provides in pertinent part:
· "It shall be unlawful . . . for any packer . . . to
(e) Engage in any course of business or do any act for the purpose or with the effect of . . . creating a monopoly in the acquisition of, buying, selling, or dealing in, any article in commerce, or of restraining commerce; . . . "
Packers and Stockyards Act, 7 U.S.C. § 193 authorized the Secretary of Agriculture to enforce the proscriptions contained in Section 192 of the Act.

torial effect, and that merger activity is not a part of the "business of insurance," the regulation of which by a state preempts federal jurisdiction under the McCarran-Ferguson Act.

Congress enacted the McCarran-Ferguson Act in reaction to the decision of the Supreme Court in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L. Ed. 1440 (1944), in which the Court held that insurance transactions were subject under the Commerce Clause to federal regulation, including federal anti-trust laws. Prior to the *South-Eastern Underwriters* case it had generally been assumed, on the basis of Paul v. Virginia, 75 U.S. (8 Wall.) 1968, 19 L.Ed. 357 (1869), that the regulation of insurance transactions rested exclusively with the states. The legislative history of the Act indicates that Congress was mainly concerned with the relationship between insurance ratemaking and the antitrust laws, and with the power of the states to tax insurance companies. Indeed, the intent of the Act seemed to be to "assure that the activities of insurance companies in dealing with their policyholders would remain subject to state regulation." SEC v. National Securities, Inc., 393 U.S. 453, 458–459, 89 S.Ct. 564, 568, 21 L.Ed.2d 668 (1969).

The provision of the Act relevant to our consideration here, Section 2(b), 15 U.S.C. § 1012(b), states that the Sherman, Clayton, and Federal Trade Commission Acts "shall be applicable to the business of insurance to the extent that such business is not regulated by State law." Interpretation of that section in light of the merits of the case at hand rests on the answers to two questions:

A. Is it possible for individual States to regulate the merger activities

of insurance companies operating in interstate commerce in national or regional markets?

B. Does the "business of insurance" as used in Section 2(b) include the merger activities of such companies?

■ The Court in interpreting Section 2(b) also takes note of the canon of construction set out in United States v. Philadelphia National Bank, 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963), that "immunity from the [federal] antitrust laws is not lightly implied."

### A.

■ The Plaintiffs maintain that the individual states, in effect, regulate the merger activities through the anti-trust laws of the principle places of business of the merging companies, and through the licensing requirements of each of the states in which the new company does business. But the plain fact remains that a state's ability to regulate is bounded by its state lines. Furthermore, a state in regulating such activities as mergers will be concerned with the effect of the merger on business in that state; it will not examine a merger in terms of national effect, because it has no power to regulate beyond the boundaries of the state.[5]

In Maryland Casualty Co. v. American General Insurance Co., (1964) Trade Cas. 71,188 (D.D.C.1964), a case somewhat similar to the case at bar, the jurisdictional issue involved the application of Section 7 to the stock acquisition of a Maryland domiciled insurance company by a Texas domiciled insurance company. As in our case the acquired company was licensed and doing business in all fifty states. The Court held that the McCarran Act did not preclude

---

5. An example of the inward focus of the states is found in the Model Insurance Holding Company System Regulatory Act, promulgated by the National Association of Insurance Commissioners and enacted and currently in force in substantially comparable form in some thirty-seven states including Maryland and Texas, which provides that:

The Commissioner is required to disprove the merger if he finds the effect of the purchases, exchanges, mergers, or other acquisitions of control may be substantially to lessen competition in insurance in *this state*, or tend to create a monopoly therein. (emphasis added).

application of Section 7 of the Clayton Act to the merger. As observed by the court:

> No regulation of the proposed acquisition of control of [Maryland Casualty Co.] or its agencies under Texas or Maryland statutes can be adequate or effective because of territorial limitations of Texas and Maryland regulations. Texas and Maryland statutes do not provide for adequate or effective regulation of the proposed acquisition of control of [Maryland Casualty Co.] or its agencies and there is no such regulation thereunder as precludes this suit under the antitrust laws. (71,188 at 79,719).

This concept that the McCarran-Ferguson Act does not contemplate extraterritorial regulation by the states was established by the Supreme Court in Federal Trade Commission v. Travelers Health Association, 362 U.S. 293, 80 S. Ct. 717, 4 L.Ed.2d 724 (1960). In that case the Commission was attempting to apply Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, to the advertising practices of an insurance company which was licensed in Nebraska and Virginia but which sold insurance policies by mail in all states. Nebraska had in force a statute which prohibited its domiciliaries from engaging in unfair and deceptive practices in the conduct of the business of insurance in any other state, territory, country or district. It was the conclusion of the Court of Appeals that because the domiciliary state had made provisions for regulating such advertising practices, that the McCarran-Ferguson Act precluded the Federal Trade Commission from regulating insurance advertising in interstate commerce. Travelers Health Association v. Federal Trade Commission, 262 F.2d 241 (8th Cir. 1959).

The Supreme Court reversed. In concluding that McCarran-Ferguson does not operate to preempt federal jurisdiction by reason of a state's attempt to regulate its domiciliary's extraterritorial activities it observed:

> We cannot believe that this kind of law of a single state takes from the residents of every other State the protection of the Federal Trade Commission Act. (362 U.S. at 298, 80 S.Ct. at 720, footnotes omitted.)

The Court in construing the Act, delved into Congressional intent relative to its enactment and extraterritorial regulation by the respective states, and concluded:

> . . . It is clear that Congress viewed state regulation of insurance solely in terms of regulation by the law of the State where occurred the activity sought to be regulated. There was no indication of any thought that a State could regulate activities carried on beyond its own borders. (362 U.S. at 300, 80 S.Ct. at 721).

The Court quoted the following statement made by Senator O'Mahoney, one of the three Senate conferees on the bill, as illustrative of meaning intended by Congress for Section 2(b) of the Act:

> When the moratorium period passes, the Sherman Act, the Clayton Act, and the Federal Trade Commission Act come to life again in the field of interstate commerce, and in the field of interstate regulation. Nothing in the proposed law would authorize a State to try to regulate for other States, or authorize any private group or association to regulate in the field of interstate commerce."

(91 Cong.Rec. 1483, as quoted as 362 U.S. at 301, 80 S.Ct. at 722).

Thus, it is clear that the extraterritoriality rationale of Travelers applies with equal force to federal antitrust regulation under the Clayton Act. It is the conclusion of this Court that because a state cannot regulate extraterritorially, the potential regulation of the instant merger by Texas and Maryland, the domiciliary states of the Plaintiffs, does not by way of the McCarran-Ferguson Act deprive the Commission of jurisdiction to challenge the merger under Section 7 of the Clayton Act when the im-

pact of the merger obviously will be felt in all fifty states.

### B.

We have held that the McCarran-Ferguson Act does not preempt Commission jurisdiction over the instant merger since no State can regulate extraterritorially. It is the further conclusion of this Court that the McCarran Act does not preempt Commission jurisdiction over this merger since the "business of insurance" does not include merger activity. Section 2(b) of the Act bars application of federal law which would "invalidate, impair or supersede any law enacted by any State for the purpose of regulating the business of insurance." Congress failed to define the scope of "business of insurance," and therefore it has been left to the courts to determine what activities of insurance companies are in fact the "business of insurance." [6]

The clearest delineation of what constitutes the "business of insurance" as contemplated by the McCarran-Ferguson Act is found in Securities and Exchange Commission v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). The SEC had brought suit against National Securities, an insurance company, alleging violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), with regard to a fraudulent scheme centering on a contemplated merger of a subsidiary of National Securities and another insurance company.

The Supreme Court reversed the court of appeals who had upheld the district court's refusal to take action on the ground that to do so would violate Section 2(b) of McCarran-Ferguson in that the pertinent Arizona statute regulated the "business of insurance." The Supreme Court's examination of what constitutes the "business of insurance" is

particularly useful as it relates to the case at bar. As analyzed by the Court:

[The McCarran-Ferguson Act] did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws "regulating the business of insurance." Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the "business of insurance" does the statute apply. Certainly the fixing of rates is part of this business; that is what *South-Eastern Underwriters* was all about. The selling and advertising of policies, FTC v. National Casualty, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540 (1958), and the licensing of companies and their agents, cf. Robertson v. California, 328 U.S. 440, 66 S.Ct. 1160, 90 L.Ed. 1366 (1946), are also within the scope of the statute. Congress was concerned with the type of state regulation that centers around the contract of insurance, the transaction which Paul v. Virginia held was not "commerce." The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement —these were the core of the "business of insurance." . . . But whatever the exact scope of the statutory term, it is clear where the focus was —it was on the relationship between the insurance company and the policyholder. Statutes aimed at protecting or regulating this relationship, directly or indirectly, are laws regulating the "business of insurance." (393 U.S. 459–460, 89 S.Ct. 568).

The relationship involved in the merger of insurance companies is in essence one between individual companies and between those companies seeking to

---

6. The Court takes note of the fact that issuing policies of insurance is only one facet of the modern insurance companies' activities; insurance companies, among other things, are major investors in the nation's public corporations; and are prime financers of commercial construction and land development.

merge and the industry as a whole. State anti-trust statutes seek to deal with the competitive aspects of these mergers, certainly a subject far removed from the relationship between the insurance company and the policyholder contemplated in *National Securities* as constituting the "business of insurance" to be protected by McCarran-Ferguson. This Court must conclude that the merger activity of insurance companies is not part of the "business of insurance" over which state regulation is given paramount importance in McCarran, and that Section 7 of the Clayton Act which is grounded on the federal interest in maintaining competition in interstate commerce in no sense invalidates, impairs, or supersedes state insurance laws which regulate the "business of insurance," i. e. the relationship between the insurance company and the policyholder.

## IV.

■ Plaintiffs have requested that the Court issue a preliminary injunction to stop pending Federal Trade Commission proceedings in FTC Docket 8847 pending the determination of this case on the merits. The factors to be considered by the Court in determining whether preliminary injunctive relief is appropriate are:

(1) whether the plaintiff is likely to prevail on the merits;

(2) whether the plaintiff is in danger of suffering irreparable harm;

(3) whether the potential harm to the defendant from issuance of the injunction outweighs the possible harm to the plaintiff if injunctive relief is denied;

(4) whether issuance of a preliminary injunction will serve the public interest.

Blackshear Residents v. Rommey, 472 F. 2d 1197 (5th Cir., 1973). The discussions of jurisdiction and the merits of the case in which this Court has already engaged negate in large part the need to consider the request for preliminary injunction. However, because proof was offered on the subject at the hearing, the Court will evaluate it in terms of the four criteria set out above.

■ As indicated by the previous discussion of the McCarran-Ferguson Act, the Court does not believe Plaintiffs are likely to prevail on the merits of his complaint. Furthermore, it is the opinion of this Court that the Plaintiffs failed to establish that they are in danger of suffering irreparable harm if the Commission is not enjoined from conducting the administrative proceeding.

The Plaintiffs attempted to show through statistics and testimony that the pending Federal Trade Commission case has caused them to lose business and to lose an increasing number of key employees which is resulting in irreparable injury. They argue that because of the Commission proceedings they have been unable to merge the companies and begin to offer the multiple line insurance coverage which is necessary to maintaining their competitive position in the market place. However, the Commission has taken no action to prevent such a consolidation. In fact, almost a year lapsed between the consummation of the merger agreement and the instituting of the Commission proceedings. Clearly, it is the Plaintiffs who have determined to withhold merging pending the outcome of the proceedings. Such action hardly constitutes the kind of irreparable harm a preliminary injunction is designed to prevent.

Likewise, the Court cannot accept the argument advanced by Plaintiff Fidelity and Deposit that they are losing an increasing number of key personnel as a result of the uncertainty created by the Commission. The testimony at the hearing indicated that Fidelity and Deposit is the kind of company that hires young men and women right out of college and subjects them to an intensive training program. As a result they have a large percentage of highly-trained and skilled people available which makes them subject to raids of personnel by competing companies.

Thus it cannot be said that the loss of personnel is the result of the pending Commission proceedings.

This Court is of the opinion that the granting of the injunctive relief requested by Plaintiffs would serve only to impede the efficient administration of the law by the Federal Trade Commission and would adversely affect third parties, including customers and competitors of American General and Fidelity and Deposit by denying them effective antitrust protection. It is the Federal Trade Commission's statutory obligation to protect the public from mergers which might result in substantially lessening competition or tending to create a monopoly. In this case the public interest is best served by denying the request for preliminary injunctive relief.

For the foregoing reasons, it is ordered, adjudged and decreed that Plaintiffs' prayer for a preliminary, as well as a permanent injunction, and for declaratory relief shall be, and hereby is, denied; and that the Defendants' motion to dismiss is granted.