AMERICAN GENERAL INSURANCE
CO. and Fidelity & Deposit Co. of
Maryland, Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 77-3207.

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1979.

Kennedy, Circuit Judge, filed a concurring opinion.

John L. Murchison, Jr. (argued), Houston, Tex., Michael J. Henke (argued), of Vinson & Elkins, Washington, D. C., for petitioners.

David C. Shonka, Atty. (argued), Washington, D. C., for respondent.

Before BROWNING and KENNEDY, Circuit Judges, and DUMBAULD *, District Judge.

DUMBAULD, District Judge:

This is a petition to review an order of the Federal Trade Commission (hereinafter called FTC), dated June 28, 1977, holding that the 1969 acquisition of Fidelity and Deposit Company of Maryland, a Maryland corporation, by American General Insurance Company (hereinafter called AG), a Texas corporation, violated section 7 of the Clayton Act,[1] and ordering divestiture and other prohibitory relief.

At an earlier stage of the Commission proceeding AG contended that the McCarran Act of March 9, 1945, 59 Stat. 33–34 as amended with respect to date by the Act of July 25, 1947, 61 Stat. 448, 15 U.S.C. § 1011–1015,[2] deprived the FTC of jurisdic-

---

* The Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. 15 U.S.C. § 18 provides, in pertinent part:
    No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly. Since the decision of *U. S. v. South-Eastern Underwriters' Assn.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), overruling *Paul v. Virginia*, 8 Wall. 168, 19 L.Ed. 357 (1868),

insurance is considered to be "commerce." The McCarran Act, discussed subsequently, was promptly passed to preserve state regulation of "the business of insurance."

2. The pertinent provision is 15 U.S.C. § 1012 which reads:
    (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
    (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided,* That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and

tion. After the FTC rejected that contention AG sought injunctive relief in Texas against further proceedings by the FTC. *American General Insurance Co. v. FTC*, 359 F.Supp. 887 (S.D.Texas 1973), aff'd 496 F.2d 197 (C.A.5, 1974). In the proceedings before the Fifth Circuit Court of Appeals, one Calvin J. Collier, then General Counsel of FTC, appeared as counsel and signed a brief arguing that section 7 of the Clayton Act was applicable notwithstanding the McCarran Act, and also arguing that in any event the insurance companies had not exhausted their administrative remedies as the Commission's action up to that point was merely interlocutory. The Court of Appeals upheld the latter contention and affirmed the dismissal of the companies' application for injunctive relief against the continuance of the Commission proceedings. The appellate tribunal did not decide the jurisdictional issue under the McCarran Act.

When the Commission did issue its final order on June 28, 1977, reaffirming its jurisdiction notwithstanding the McCarran Act, its opinion was written by Mr. Collier, who was then a Member of the Commission.

The insurance companies argue in this Court that Mr. Collier should have disqualified himself from participation in the Commission's decision because of his prior participation in the case as counsel. We agree, and remand the case for further proceedings before the Commission. We express no views at this time on the interesting questions under the McCarran Act and the

Clayton Act which would be presented if we reached the merits of the case.

At the argument before this Court, a member of the panel called the attention of counsel for the FTC to numerous instances where Supreme Court Justices had abstained by reason of the fact that they had been Attorney General during the pendency of the case, and asked whether it was the FTC's position that a Commissioner of the FTC should be governed by a less stringent standard than a Judge. Counsel's answer in the negative substantially amounted to concession of the issue involved.

In addition to customary practice, it may be noted that in the case of a judge there is a statutory provision requiring disqualification in any case in which he "has participated as counsel."[3]

The same rule has been applied to administrative proceedings in *TWA v. CAB*, 102 U.S.App.D.C. 391, 392, 254 F.2d 90, 91 (1958).

The principle that a party should not be judge in his own case represents a venerable tradition in Anglo-American legal history. Blackstone declared that "if an act of parliament gives a man power to try all causes, that arise within his manor of Dale; yet, if a cause should arise in which he himself is party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel."[4]

Lord Coke laid down the same doctrine in *Dr. Bonham's Case*, 8 Rep. 114a (C.P. 1610), which Blackstone cited in the above-quoted

---

the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

AG contends that State laws regulating mergers of insurance companies exist and supersede the provisions of section 7 of the Clayton Act. The FTC, relying on *SEC v. National Securities*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), contends that the words "business of insurance" refer only to relations between a company and its policyholders, not to anticompetitive relationships between companies.

3. 28 U.S.C. 455, as amended by the Act of December 5, 1974, 88 Stat. 1609, provides that "Any . . . judge . . . shall disqualify himself. . . . Where he has served in governmental employment and in such capacity participated as counsel . . . or expressed an opinion concerning the merits of the particular case in controversy."

4. Blackstone, *Commentaries on the Laws of England*, I, 91. The example about the manor of Dale is derived from Coke's language in *Dr. Bonham's Case*, 8 Rep. 114a, at 118b.

**464**

passage.[5] Dr. Thomas Bonham, a doctor of medicine from the University of Cambridge, was found deficient in medical science by the Royal College of Physicians, was fined and forbidden under pain of imprisonment to continue practice until admitted by the College. He continued to practice, and was committed to prison pursuant to the order of the College. He then brought an action of trespass for false imprisonment, in which he prevailed, although the College's disciplinary powers had been granted by an ancient patent of Henry VIII twice confirmed by acts of Parliament. Coke declared that since the College was to receive for its own benefit half of the fines imposed, it occupied the status both of party to the litigation and judge, in contravention of an established maxim of the common law.[6]

On this point Coke said: "The censors [of the College] cannot be judges . . . and parties; judges to give sentence or judgment; . . . and parties to have the moiety of the forfeiture, *quia aliquis non debet esse Judex in propria causa; imo iniquum est aliquem suae rei esse judicem;* and one *cannot be judge and attorney for any of the parties.*" (Emphasis supplied).[7]

The same maxim was reaffirmed eloquently by Sir Henry Hobart in *Day v. Savadge,* Hob. 84 (K.B. 1614): "even an Act of Parliament made against Natural Equity, as to make a Man Judge in his own Cause, is void in itself, for *Jura naturae sunt immutabilia* and are *leges legum.*"[8] So too Lord Holt in *City of London v. Wood,* 12 Mod.* 669, 687 (1701), held invalid a fine for refusal to serve as sheriff recovered by the city in its own court of Mayor and Aldermen.[9]

And the same doctrine was proclaimed by the Supreme Court of the United States with respect to judgments of the minor judiciary where the judge's compensation is derived from fines imposed and collected in proceedings adjudicated by him. *Tumey v. Ohio,* 273 U.S. 510, 522–24, 47 S.Ct. 437, 71 L.Ed. 749 (1927) [Taft, C.J.].

That the judge's or quasi-judicial officer's participation in the case as counsel may have been superficial rather than substantial does not affect the applicability of the principle. In the *TWA* case, *supra,* the member of the Civil Aeronautics Board there found to be disqualified had signed a brief in the same case which argued different questions than those involved in the proceeding upon which he sat after his appointment to the CAB. In the case at bar the disqualification rule would apply *a fortiori,* since the crucial jurisdictional issue decided by the FTC in Commissioner Col-

**5.** This case was cited by James Otis in his argument against writs of assistance, and may have contributed to establishment in America of the doctrine of judicial review. Wroth and Zobel, *Legal Papers of John Adams* (1965) II, 118–21, 128. In the opinion of John Adams: "Otis was a flame of fire! . . . American independence was then and there born." *The Works of John Adams* (1856) X, 247. See also T.F.T. Plucknett, "Bonham's Case and Judicial Review," 40 Harvard L.R. (1926) 30; and S. E. Thorne, "Dr. Bonham's Case," 54 Law Quarterly Review (1938) 556.

**6.** Plucknett, note 5 *supra,* 31–34. Littleton, whose treatise on *Tenures* forms the nucleus of Coke's celebrated commentary, said that it is "against reason" that a man should be his own judge. Percy H. Winfield, Public Policy in the English Common Law, 42 Harv.L.R. (1928) 76, 81, citing Co.Litt. § 212.

**7.** 8 Rep. at 118b. Coke then proceeded to set forth the famous passage (that a statute against natural justice or equity could be disregarded by the court) which inspired James Otis and proponents of judicial review. See note 5, *supra.*

**8.** Plucknett, note 5 *supra,* 49; Hobart at 87a–87b. This case was in trespass for taking two bags of nutmegs for unpaid wharfage charges. Plaintiff contended that being a freeman of the City he was not liable for such charges. The court held that this case did not involve a general custom of London the existence of which by statute might be certified by the Mayor and Aldermen, but concerned only the corporate interest of the City; and that "it was against right and justice, and against natural equity to allow them their certificate, wherein they are to try and judge their own cause." Hobart at 86.

**9.** Plucknett, note 5 *supra,* 54. According to Holt, "it is against all laws that the same person should be a party and judge in the same cause," citing *Dr. Bonham's Case.*

lier's opinion was identical with that argued by him as counsel before the Fifth Circuit Court of Appeals.[10]

As previously noted, it has been the uniform practice of Supreme Court Justices to decline participation in cases pending in the Department of Justice during their tenure as Attorney General. In many such cases it is probably true that the Attorney General personally took no substantial part whatever in actually working on the case. But his mere responsibility for administrative supervision of the Department, regardless of the extent of his knowledge and his approval of the acts of his subordinates, has been deemed sufficient to activate the disqualification rule.[11]

Consequently, in the case at bar we conclude that the Commission's final order of June 28, 1977, here under review, is infected with invalidity by reason of Commissioner Collier's participation, and the matter is hereby remanded to the Commission for further proceedings in conformity with this opinion.

Remanded.

KENNEDY, Circuit Judge, concurring:

Some rules of automatic disqualification go beyond what is necessary to preserve justice and public confidence, and their rigorous application even may retard achievement of those ends. In this case, however, the Commissioner who authored the opinion had participated in previous court proceedings involving the same parties. In those proceedings he contended for adoption of a principle that is critical to this case. I have no hesitation in saying this is unacceptable, *see, e. g., Trans World Airlines, Inc. v. CAB*, 102 U.S.App.D.C. 391, 254 F.2d 90 (1958), and I therefore concur in the judgment of the court.

10. This is true even though the actual decision of the Court of Appeals was based on a different point than the one which Collier had argued and which he reaffirmed in his opinion as chairman of the Commission.

11. Mere general supervisory authority *in vacuo*, prior to initiation of the specific case, does not disqualify. *U. S. v. Wilson*, 426 F.2d 268, 269 (C.A.6, 1970); *U. S. v. Amerine*, 411 F.2d 1130, 1133–34 (C.A.6, 1960); John P. Frank,

Disqualification of Judges, 56 Yale L.J. (1947) 605, 627; Frank, Disqualification of Judges: In Support of the Bayh Bill, 34 Law & Contemporary Problems (1970) 43, 50. But an official is disqualified "if he either signs a pleading or brief" or "if he actively participated in any case even though he did not sign a pleading or brief." Mr. Justice Rehnquist in *Laird v. Tatum*, 409 U.S. 824, 828, 93 S.Ct. 7, 10, 34 L.Ed.2d 50 (1972).