[No. D013700. Fourth Dist., Div. One. Feb. 28, 1992.]

JOHN R. HOWITT, Petitioner, v.
THE SUPERIOR COURT OF IMPERIAL COUNTY, Respondent;
COUNTY OF IMPERIAL et al., Real Parties in Interest.

1576

**COUNSEL**

Daniel J. Sullivan for Petitioner.

Thomas M. Fries, County Counsel, and Carolyn S. Janzen, Deputy County Counsel, for Respondent and for Real Parties in Interest.

## OPINION

**WIENER, Acting P. J.**—This petition for extraordinary relief presents another facet of attorney disqualification in the public sector. For the reasons set forth we will deny the petition without prejudice to further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner John R. Howitt, an Imperial County deputy sheriff, became embroiled in a dispute with the sheriff's department regarding Howitt's transfer from the Winterhaven station to the El Centro jail and summary suspension without pay. Howitt contended the retransfer and suspension were punitive in nature and sought an administrative hearing before the Imperial County Employment Appeals Board (Board). (See Gov. Code, § 3304, subd. (b).) The Board is a quasi-independent administrative tribunal established by county ordinance and charged with adjudicating certain disputes between the county and county employees.

After first rejecting Howitt's request for a hearing, the county, represented by the county counsel's office, eventually conceded the point and a hearing was scheduled. Howitt then discovered that not only was the sheriff's department to be represented at the hearing by a deputy county counsel; in addition, the county counsel Thomas Fries would advise the Board at the hearing and throughout the decisionmaking process as well as prepare the Board's written decision.

Possessed of this information, Howitt requested the county counsel's office disqualify itself from advising the Board with regard to his administrative hearing. When county counsel refused, Howitt unsuccessfully petitioned for writ of mandate in the superior court.

### DISCUSSION

In *Civil Service Com. v. Superior Court* (1984) 163 Cal.App.3d 70 [209 Cal.Rptr. 159], a case involving employees of the County of San Diego, we recognized the problem presented by this case. The civil service commission in San Diego County performs a function analogous to the employment appeals board in Imperial County. In a footnote, we explained:

"The attorney who represents a client with interests adverse to another current client encounters the very real danger 'that he will be tempted, perhaps unconsciously, to favor the interests of a particularly important

client over the adverse or potentially adverse interests of a less favored client.' (*Developments in the Law—Conflicts of Interest in the Legal Profession* (1981) 94 Harv. L.Rev. 1244, 1296.) Here, there is every reason to believe that county counsel would be tempted to favor the interests of the County in giving advice to the Commission. The Commission's primary, if not sole function, is to pass judgment on the conduct of the County toward its employees. Every Commission decision has the potential of being adverse to one of the County's constituent agencies. Because county counsel is directly responsible to the board of supervisors, it is difficult to conceive how any member of the county counsel's office can render independent advice to the Commission. The structure of the system would appear necessarily to skew such advice in favor of the County and against the county employees. And even in those circumstances where county counsel renders advice to the Commission favoring the employee, such advice places him in a position adverse to his client, the County." (163 Cal.App.3d at pp. 78-79, fn. 1.)

Needless to say we had no occasion there to consider the broad context of the problem we recognized or to suggest a possible solution. *Civil Service Commission* was a case in which the county challenged a commission decision by filing a mandate petition in the superior court. Having previously advised the Commission, county counsel sought to represent the county against the Commission in court. Relying on the Rules of Professional Conduct which prevent a lawyer from representing interests adverse to a former client in a matter substantially related to the former representation, we held the Commission was entitled to request the disqualification of county counsel. ■ Referring to our earlier footnote commentary, we concluded, "To the extent that county counsel is ever permitted to place himself in such a position in the first place (see *ante*, fn. 1), it is clear if the situation escalates to litigation, he cannot remain as counsel for one of his clients in opposition to the other." (163 Cal.App.3d at p. 81.)

I

■ This case presents the foundational question left open in *Civil Service Commission* whether a county counsel's office "is ever permitted to place [it]self in [the] position" of acting as an advocate for one party in a contested hearing while at the same time serving as the legal adviser for the decision maker.

As we shall explain, we answer the question "yes" provided there is compliance with the guidelines set forth in this opinion.

Unlike the issue in *Civil Service Commission*, the answer to the question in this case is not provided by rules of ethics and professional responsibility for

lawyers.[1] Although the California Rules of Professional Conduct, rule 3-310(B) provides that a lawyer "shall not concurrently represent clients whose interests conflict," the conflict may be waived by the clients' "informed written consent." As we noted in *Civil Service Commission*, there is every reason for the decision maker to be concerned with the independence of the advice it is receiving under such circumstances and the record here does not reflect that the Board has waived the conflict. Nonetheless, the rule is obviously not designed to deal with the situation in which one of the clients is a party to a dispute and one is the decision maker. The fact that the represented party and the decision maker are willing to waive a conflict does precious little for the remaining party who must face an adversary with unequal access to the tribunal.

Accordingly, we must pursue other avenues of assistance in resolving this issue. The parties have directed us to various cases which have addressed contentions that the overlapping functions of members of or lawyers for an administrative agency violated the due process rights of a party appearing before the agency. As a general proposition these cases recognize a due process entitlement to an impartial decision maker but conclude that overlapping functions do not amount to a constitutional violation absent specific evidence of bias.

Chief among these cases is the United States Supreme Court's decision in *Withrow* v. *Larkin* (1975) 421 U.S. 35 [43 L.Ed.2d 712, 95 S.Ct. 1456], involving the suspension of a doctor's license by an examining board of practicing physicians. The board was empowered to review complaints against doctors by conducting an "investigative hearing" at which the doctor had limited ability to participate. If the investigative hearing yielded significant evidence of wrongdoing, the board would notice a "contested hearing" to decide whether the doctor's license should be suspended. A doctor under investigation challenged the board's procedure as violative of due process because the combination of investigative and adjudicatory functions deprived him of an impartial tribunal. Characterizing the issue as a "substantial" one (*id.* at p. 51 [43 L.Ed.2d at p. 726]), the court nonetheless refused

---

[1]For similar reasons this court's recent decision in *In re Lee G.* (1991) 1 Cal.App.4th 17 [1 Cal.Rptr.2d 375] provides little guidance on the question before us. In *Lee G.*, county counsel represented the public conservator seeking to establish an LPS conservatorship over a mother. At the same time, county counsel also represented the department of social services (DSS) which sought to prevent the mother from obtaining custody of her son who had been previously determined to be a dependent child of the juvenile court. County counsel did not advise any decisionmaker. Relying on traditional principles developed in the context of professional ethics, we rejected the mother's argument that county counsel should be disqualified from representing the DSS. We reasoned that in both situations, county counsel represented interests adverse to the mother and that in both, the mother was represented by independent counsel. (*Id.* at p. 32.)

to adopt a blanket rule "that agency members who participate in an investigation are disqualified from adjudicating." (*Id.* at p. 52 [43 L.Ed.2d at p. 726].) "No specific foundation has been presented for suspecting that the Board has been prejudiced by its investigation or would be disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing. The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing." (*Id.* at p. 55 [43 L.Ed.2d at p. 728].)

The California Supreme Court employed a similar analysis in *Kloepfer* v. *Commission on Judicial Performance* (1989) 49 Cal.3d 826 [264 Cal.Rptr. 100, 782 P.2d 239, 89 A.L.R.4th 235], rejecting a judge's argument that the commission's combination of investigative and adjudicatory functions constituted a denial of due process. The *Kloepfer* court emphasized that the commission's functions involve considerably less overlap than the examining board's in *Withrow*. Specifically, while the commission's staff initially investigates complaints against judges, the prosecutorial responsibility shifts to the Attorney General's office once formal proceedings are instituted. In addition, the evidence is initially presented to a panel of special masters appointed by the Supreme Court and only then reviewed by the commission. (*Id.* at pp. 834-835.)

Both *Withrow* and *Kloepfer* exemplify administrative procedures which depart to some extent from the *pure* adversary model of a passive and disinterested tribunal hearing evidence and argument presented by partisan advocates. The departure is perhaps more dramatic in *Withrow*, where the functions of investigation and adjudication are effectively merged in the same persons, than in *Kloepfer*, where the commission's staff conducted an initial investigation. Nonetheless, these decisions and numerous others stand for the proposition that the pure adversary model is not entitled to constitutionally enshrined exclusivity as the means for resolving disputes in "[t]he incredible variety of administrative mechanisms [utilized] in this country . . . ." (*Withrow, supra,* 421 U.S. at p. 52 [43 L.Ed.2d at pp. 726-727].) ▉ The mere fact that the decision maker or its staff is a more active participant in the factfinding process—similar to the judge in European civil law systems—will not render an administrative procedure unconstitutional.

A more difficult question is presented where the administrative agency chooses to utilize the adversary model in large part but modifies it in a way which raises questions about the fairness of the resulting procedure. Here, for instance, we assume the county constitutionally could have allowed the

sheriff or the board of supervisors to review personnel complaints by employees in the sheriff's department. Instead, it created an independent and disinterested administrative board to adjudicate disputes between the county and its employees. The board of employment appeals cannot be overruled by another county agency or even by the board of supervisors. The Board does not have its own investigative arm but instead relies on adversary presentations by the employee and affected county agency to illuminate the facts and relevant legal authority. Each party is entitled to be represented by counsel at a formal hearing.

It is in the midst of this seemingly adversary system that we discover the same lawyers who represent the various county departments as advocates also advise the Board with regard to its decision affecting those county departments. The mental image comes to mind of a hearing in which county counsel representing a county department raises an objection and then excuses himself from counsel table to consult with the Board members as to whether the objection should be sustained. (See *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864, 870-871 [128 Cal.Rptr. 54].)

 It is true the record in this case does not indicate that the same lawyer will both represent the sheriff's department and advise the Board at the hearing. Letters which are part of the record suggest that one of four deputies in the county counsel's office will represent the sheriff while the county counsel himself, Thomas Fries, will advise the Board.[2] Perhaps because the issues were not as focused below, there is no evidence to indicate whether or the extent to which Fries is screened from information about the case during prehearing investigation and preparation. In this regard, however, we note that Fries is the administrative supervisor of the office. Indeed, a preliminary letter to Howitt's counsel about a discovery matter refers to the sheriff as "my client" and includes Fries's signature block with the actual signature by a deputy county counsel. (Cf. *American General Ins. Co.* v. *F. T. C.* (9th Cir. 1979) 589 F.2d 462, 465.)

## II

Most of the cases which have considered a due process challenge to the overlapping functions of an administrative agency focus on the agency, commission or board itself and not on a lawyer's representation of conflicting interests. A few, however, have considered the overlapping functions of

---

[2]Contrary to the county's claim, we do not view it as critical that Fries will advise the Board only as to "legal issues" and not as to the ultimate disposition of the hearing. Any lawyer knows that a legal question may become the determinative issue in a given case. Fries would have to be aware how his advice on a particular issue might affect the substantive position being argued by one of his deputies. (See *Walker* v. *City of Berkeley* (9th Cir. 1991) 951 F.2d 182, 185.)

lawyers in the administrative context but, sometimes in dicta, have reached inconsistent conclusions.

The authority supporting a lawyer's participation in a proceeding as both an advocate and adviser to the decision maker stems largely from two cases decided long before *Withrow*'s due process principles were announced. In *Chosick* v. *Reilly* (1954) 125 Cal.App.2d 334 [270 P.2d 547], the court rejected a licensee's complaint that the State Board of Equalization improperly "ask[ed] staff assistants connected with the prosecution of the case for recommendation and assistance." (*Id.* at p. 337.) The *Chosick* court concluded: "In general, the fact that an administrative agency is both accuser and judge is not considered to deprive the accused of due process of law. [Citation.] We see no good reason why, this being so, the same trained personnel cannot legally advise and assist the agency in both functions if such assistance does not violate any statutory provisions and if the agency itself makes the actual decision." (*Id.* at p. 338.)

In *Ford* v. *Civil Service Commission* (1958) 161 Cal.App.2d 692 [327 P.2d 148], the court summarily disposed of a discharged county employee's contention that an adverse commission decision should be reversed because of county counsel's overlapping roles.

"Appellant now insists that because the civil service commission is advised by a member of the staff from the county counsel's office, and the department is also represented by another member of the county counsel's staff, that such presents 'a cozy situation' and is reversible error. Whether it was cozy or dismal and cheerless makes little difference if it was entirely fair and proper. Under our law, an administrative agency can even be both the prosecutor and judge in the same manner. [Citation.] There is no evidence that the deputy county counsel who advised the commission did anything other than that which was wholly proper." (161 Cal.App.2d at p. 697.)

*Ford* provided the linchpin for the court's decision in *Greer* v. *Board of Education* (1975) 47 Cal.App.3d 98 [121 Cal.Rptr. 542], rejecting a challenge to the arguably more troublesome situation in which the same lawyer represented the school district administration in a personnel hearing before a hearing officer and then advised the school board reviewing the hearing officer's decision. Apart from quoting *Ford*, the *Greer* court simply commented, "By the very nature of the administrative process the agency or

one of its agents or representatives is bound to be involved in the initiation and prosecution of charges." (*Id.* at p. 119.)[3]

One year later the court in *Midstate Theatres, Inc.* v. *County of Stanislaus, supra,* 55 Cal.App.3d 864 considered a situation similar to that presented in *Greer* but reached a diametrically opposite conclusion. Relying on both due process principles and an applicable statute (Gov. Code, § 31000.7), the court explained that the same lawyer could not represent the county assessor and advise the county board of equalization in the same proceeding. (55 Cal.App.3d at p. 875.) The court's discussion of the statute is of particular interest here because section 31000.7 prohibits members of the same law firm from " 'advis[ing] or represent[ing] both the assessor and the county board of equalization on any matters relating to hearings before the county board of equalization.' " (55 Cal.App.3d at p. 874.) The statute also provides, however, that "[t]his prohibition shall not apply to the county counsel's office." Commenting on the county counsel exception, the court termed it a "legerdemain g[iving] birth to a solution of dubious validity." (*Id.* at p. 875.)

One more recent decision has touched on the issues presented in this case but its analysis in dicta is inconclusive. In *Rowen* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 633 [174 Cal.Rptr. 185], the court concluded that the conflict issue framed by the petitioner was not in reality presented because there was no showing the advocate in question ever advised the administrative board. (*Id.* at p. 641.) Discussing the issue generally, the *Rowen* court did not discuss *Withrow* or *Kloepfer*. It did, however, cite both *Chosick* and *Ford* in suggesting that while the same lawyer might be precluded from simultaneously acting as advocate and adviser, different lawyers from the same office could assume the separate roles. (*Ibid.*) It did not indicate whether there were particular requirements to be met if this was to occur.

It bears noting that the procedural posture of most of the cases, particularly *Chosick, Ford* and *Greer*, differ from this case. Each involved challenges to an administrative decision on the ground that the decision maker

---

[3]The county suggests the Supreme Court's *Kloepfer* case also addresses and approves of a lawyer's dual role in the administrative context. It is true the judge in *Kloepfer* asserted that the commission's chief counsel participated in the initial investigation and then later advised the commission during adjudicatory proceedings. (49 Cal.3d at p. 833.) Counsel's role, however, was never referred to again by the court in resolving the due process contention. In any event, the chief counsel's involvement is no different than that of other administrative agency members who participate in both investigative and adjudicatory phases of a proceeding. More significant, in our view, is the fact that the procedures utilized by the Commission on Judicial Performance and approved in *Kloepfer* do not result in lawyers acting as both advocates before the commission and advisers to the commission.

was biased because it received advice from a partisan advocate. This case, in contrast, involves a request to disqualify county counsel and does not seek invalidation of an already rendered administrative decision. In holding that a showing of actual bias or prejudice is necessary to justify reversal of a decision, *Chosick, Ford* and *Greer* do not address the question whether a similar showing is necessary where disqualification of counsel is sought before the administrative hearing takes place.

More importantly, the reliance in those decisions on the premise that an administrative agency can be both the prosecutor and judge overstates the applicable law as clarified in *Withrow* v. *Larkin*. As we have noted, the courts that have addressed due process challenges of the sort presented here appropriately recognize the need for flexibility in the area of administrative procedure. ■ Some agencies allow the decision maker to play an active role in the investigation and development of the relevant facts rather than rely on the adversary presentations of interested parties. In other contexts such as the State Bar disciplinary system, the prosecutorial and adjudicatory functions are nominally combined under the same aegis but are in reality sealed off from one another to prevent the tribunal's impartiality from being tainted. (See generally Bus. & Prof. Code, §§ 6079.5, 6086.5; State Bar Rules of Proc., rules 101, 210, 211.) Neither of these situations necessarily violates procedural due process.

A different issue is presented, however, where *advocacy* and decision-making roles are combined. ■ By definition, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator. (See *Applebaum* v. *Board of Directors* (1980) 104 Cal.App.3d 648, 658 [163 Cal.Rptr. 831]; see also *Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238, 242 [64 L.Ed.2d 182, 188, 100 S.Ct. 1610.) Here, as part of an adversary process, the county counsel will be asked to advise the Board about legal issues which Board members feel are relevant in deciding whether one of his subordinates wins or loses the case. To allow an advocate for one party to also act as counsel to the decision maker creates the substantial risk that the advice given to the decision maker, "perhaps unconsciously" as we recognized in *Civil Service Commission* (163 Cal.App.3d at p. 78, fn. 1), will be skewed.

The State Bar of New Mexico's Advisory Opinions Committee reached similar conclusions in its Opinion 1990-1 regarding an inquiry about a city whose general governing board or commission also sits as a personnel board to review hiring and firing decisions of the city manager. The municipal attorney generally advises the city manager as to personnel decisions and

also advises the commission when acting other than as a personnel board. The advisory opinion concludes that the municipal attorney should not advise the commission in its capacity as a personnel board:

"We do not perceive the . . . issue to be as much of an ethical problem as a legal problem. What we mean by this is that we do not believe any ethical prohibition would be violated if the municipal attorney both advised management to fire a particular employee, for example, and then advised the commission/board to the same effect. This situation may present due process problems concerning the fairness of the employee's hearing before a supposedly neutral decision maker and, to that extent, we believe it is a wise choice to advise the city to arrange for outside counsel for the commission/board in grievance hearings. *We believe it is particularly appropriate for the personnel board to be advised by outside counsel when the municipal attorney appears before it as an advocate for management.* This will avoid any potential for conflict as well as any appearance of impropriety that might otherwise attach due to the role as advisor to management." (Italics added.)

The county seeks to distinguish the New Mexico Bar opinion on the ground that the commission has numerous other functions whereas the employment appeals board's sole responsibility is to resolve disputes between the county and its employees. While the distinction exists, it is not relevant for the purposes of deciding this case. As the New Mexico opinion makes clear, the commission is cast as a "supposedly neutral decision maker" just as the employment appeals board is here. It is the attorney's dual role as both advocate for a party and adviser to the tribunal which does violence to that constitutional ideal.

## III

As we have noted, many of the cases which raise due process concerns about these dual representation issues focus on the more obvious problem of the same lawyer acting as both advocate and adviser to the decision maker. (See, e.g., *Midstate Theatres, supra,* 55 Cal.App.3d at pp. 871, 875; *Rowen v. Workers' Comp. Appeals Bd., supra,* 119 Cal.App.3d at p. 641.) ■ As the court recognized in *Midstate Theatres,* however, the concerns do not disappear simply because different lawyers in the same office perform the two functions. (See *ante,* p. 1584.) Performance of both roles by the same law office is appropriate only if there are assurances that the adviser for the decision maker is screened from any inappropriate contact with the advocate.

Notwithstanding comments in some of the earlier cases (see, e.g., *Ford v. Civil Service Commission, supra,* 161 Cal.App.2d at p. 697), the burden of

providing such assurances must rest with the law office performing the dual roles, here the county counsel's office. Generally, where a "Chinese wall" defense has been allowed in attorney disqualification cases, the burden is always on the party relying on the wall to demonstrate its existence and effectiveness. (See, e.g., *Higdon* v. *Superior Court* (1991) 227 Cal.App.3d 1667, 1680 [278 Cal.Rptr. 588]; *Castro* v. *Los Angeles County Bd. of Supervisors* (1991) 232 Cal.App.3d 1432, 1440 [284 Cal.Rptr. 154]; see also *People* v. *Lopez* (1984) 155 Cal.App.3d 813, 827 [202 Cal.Rptr. 333].) As a practical matter, were the burden allocated otherwise, it would seldom if ever be possible for the opposing party to demonstrate that the lawyer in question had not been adequately screened. Similar pragmatic considerations are applicable here. If the adviser has been screened, it should be relatively easy for county counsel to explain the screening procedures in effect. On the other hand, if there has been improper contact, it would likely be known only to the lawyers involved and perhaps to the board members. A party challenging the dual representation would have virtually no way of obtaining evidence to demonstrate any impropriety.

 The record in this case contains no evidence of any procedure in the county counsel's office to screen lawyers who advise the appeals board from the advocacy functions of the office. We are nonetheless reticent to rely on this record in concluding that the county counsel's office has failed to meet its burden where the screening issue was not raised below and has only been highlighted as part of the process of appellate review. Under these circumstances, we believe it only fair to deny Howitt's petition without prejudice to his renewing his petition in the superior court guided by the dictates of this opinion. This will give county counsel's office the opportunity to make any showing it can to demonstrate that the Board's adviser has been adequately screened.[4] Needless to say, if county counsel cannot demonstrate an effective screening procedure in this case, the renewed petition should be granted.

### DISPOSITION

The petition for writ of mandate is denied without prejudice to a renewal of the petition in the superior court and further proceedings consistent with this opinion.

Nares, J., concurred.

**BENKE, J., Concurring.**—I concur in the result reached by the majority only insofar as it denies petitioner's writ.

---

[4]Without commenting extensively on or deciding an issue yet to be fully developed by the presentation of evidence, we do not envision that an adequate screening procedure for due process purposes requires the creation of functionally separate offices to advocate and advise. It should be sufficient if the lawyer advising the Board has no potential involvement in or responsibility for the preparation or presentation of the case.

I

As the majority notes, this case presents the following question: Is the county counsel's office ever permitted to place itself in the position of acting in a dual capacity as an advocate for one party in a contested administrative hearing while at the same time serving as legal adviser to the decision maker at that hearing?

In response to this question the majority opinion states " 'yes' provided there is compliance with the guidelines set forth in this opinion." (Maj. opn., *ante*, p. 1579.)

The majority's answer, however, is but a judicial wink which I find remarkable in its ambiguity.

Superficially, this immediate and direct response by the majority appears to accept the premise that as a general matter it does not offend established principles of due process for a county counsel's office to act in a dual role of adviser and advocate.

To the contrary the majority actually adopts the opposite premise, i.e., that such dual capacity offends due process and is unacceptable unless certain conditions are met by the county counsel's office. This premise is apparent throughout the majority's opinion, where for example, it concludes: "The role [of advocate] is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator. [Citations.] Here, as part of an adversary process, the county counsel will be asked to advise the Board about legal issues which Board members feel are relevant in deciding whether one of his subordinates wins or loses the case. *To allow an advocate for one party to also act as counsel to the decision maker creates the substantial risk that the advice given to the decision maker, 'perhaps unconsciously' as we recognized in Civil Service Commission (163 Cal.App.3d at p. 78, fn. 1), will be skewed.*" (Maj. opn., *ante*, p. 1585, italics added.)

Likewise, in citing with approval Advisory Opinion 1990-1 of the State Bar of New Mexico (which concludes due process principles are violated when a government entity acts as both advocate for a party and adviser to the adjudicatory body) the majority states: "It is the attorney's dual role as both advocate for a party and adviser to the tribunal which does violence to [the] constitutional ideal [of a neutral decision maker]." (Maj. opn., *ante*, p. 1586.)

I do not perceive my quarrel with the majority's premise as trivial. Respectfully, the premise in fact adopted by the majority turns firmly

established principles of administrative law on their heads and creates irreconcilable conflict with existing case law.

## II

As noted, the premise of the majority is that the county counsel's dual representation, standing alone, offends petitioner's due process rights. This view, however, runs counter to the established principles which underlie the law of administrative hearing process.

The principles which govern the propriety of dual representation in the setting of administrative hearings emerge clearly in *Withrow* v. *Larkin* (1975) 421 U.S. 35, 46 [43 L.Ed.2d 712, 723, 95 S.Ct. 1456] (*Withrow*). There, the Wisconsin Medical Examining Board had served as both investigator of petitioner doctor's alleged wrongdoing and as the adjudicatory body which temporarily suspended his license because of that wrongdoing.

In concluding the dual function permissible, the Supreme Court observed that in pursuit of the goal of preventing even the probability of unfairness, "various situations have been identified in which experience teaches that the probability of actual bias *on the part of the judge or decisionmaker* is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him.

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and *it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.*" (*Withrow, supra,* 421 U.S. at p. 47 [43 L.Ed.2d at pp. 723-724], fns. omitted, italics added.)

"That is not to say that there is nothing to the argument that those who have investigated should not then adjudicate. The issue is substantial, it is not new, and legislators and others concerned with the operations of administrative agencies have given much attention to whether and to what extent distinctive administrative functions should be performed by the same persons. No single answer has been reached. Indeed, the growth, variety, and complexity of the administrative processes have made any one solution highly unlikely. . . .

"It is not surprising, therefore, to find that '[t]he case law, both federal and state, generally rejects the idea that the combination [of] judging [and] investigating functions is a denial of due process. . . .' [Citation.] Similarly, our cases, although they reflect the substance of the problem, offer no support for the bald proposition . . . that agency members who participate in an investigation are disqualified from adjudicating. The incredible variety of administrative mechanisms in this country will not yield to any single organizing principle." (*Withrow, supra*, 421 U.S. at pp. 51-52 [43 L.Ed.2d at pp. 726-727], fns. omitted.)

"Here, the Board stayed within the accepted bounds of due process. Having investigated, it issued findings and conclusions asserting the commission of certain acts and ultimately concluding that there was probable cause to believe that appellee had violated the statutes.

"The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position." (*Withrow, supra*, 421 U.S. at p. 57 [43 L.Ed.2d at p. 729].)

Having rejected the general proposition that the dual capacity of investigator and adjudicator standing alone violates due process, the court noted that on a case-by-case basis, a judge *in a given situation* might deem the risk of bias or conflict constitutionally impermissible: "That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present *in the case before it* that the risk of unfairness is intolerably high. Findings of that kind made by judges with special insights into local realities are entitled to respect." (*Withrow, supra*, 421 U.S. at p. 58 [43 L.Ed.2d at p. 730], italics added.)

In *Kloepfer* v. *Commission on Judicial Performance* (1989) 49 Cal.3d 826, 827-828 [264 Cal.Rptr. 100, 782 P.2d 239, 89 A.L.R.4th 235] (*Kloepfer*), the California Supreme Court joined in *Withrow*'s conclusion that combined investigative and adjudicative functions of the Commission on Judicial Performance does not, alone, create a constitutionally unacceptable risk of bias. There, the court rejected a judge's general argument that the commission's combined investigative and adjudicatory functions constituted a denial of due process. The court further noted the commission's functions involved even less overlap than the examining board's in *Withrow* because while the commission's staff initially investigates complaints against judges, the prosecutorial responsibility shifts to the Attorney General's office once formal

proceedings are instituted, ultimately with the Supreme Court acting as the final decision maker charged with reviewing the evidence and independently assessing its weight and relevance.

Although *Withrow* and *Kloepfer* concern a dual capacity argument where one governmental entity is acting as investigator and adjudicator, I find in those cases guidance necessary to resolve the issue before us.

The conduct of governmental entities, including both the Employment Appeals Board (the Board) and the county counsel here, are entitled to a strong presumption of honesty and integrity. (*Withrow, supra*, 421 U.S. at p. 47 [43 L.Ed.2d at pp. 723-724]; *Hortonville Dist.* v. *Hortonville Ed. Assn.* (1976) 426 U.S. 482, 492, 497 [49 L.Ed.2d 1, 9, 96 S.Ct. 2308]; *Kloepfer, supra*, 49 Cal.3d at p. 834.) In this regard, it is important at the outset to keep in mind the posture of petitioner's argument. It is not that the county counsel's office or anyone in it has, or will, act improperly. Nor has petitioner ever argued the Board here, or any of its members, has or will act improperly.

Given this posture of the case, it cannot be said that petitioner has overcome the presumption of propriety, integrity and honesty which attaches to the Board. Contrary to the majority view, this presumption has not been rebutted merely because the county counsel's office represents one party and serves as legal adviser to the Board. Said another way, dual representation by the county counsel's office has not been shown to carry with it the unacceptable risk of *actual* bias on the part of the Board such that that office must be precluded from the dual representation.

Focusing upon the dual function of the county counsel's office vis-à-vis the Board, it is apparent that the county counsel's office is not a direct participant in the decisionmaking function of the Board and assumes none of the independent authority of that Board on procedural or substantive issues. That office acts as legal adviser to the Board, in such capacity advising on matters of county policies and procedure, ordinances and hearing procedures. While it advises the Board in such matters, the chairman of the board makes all final adjudications of such procedural issues. Moreover, the county counsel's legal adviser to the Board does not participate in the decisionmaking process of the Board members but remains "on call" for legal advice. Once the Board makes its decision, it may direct the legal adviser to prepare the Board's written decision and findings for Board signature. I cannot conclude this relationship between the county counsel's office and the Board poses *actual* risk of bias or prejudgment such that the relationship must be forbidden.

Given the county counsel's minimal intrusion into the autonomy of Board decisions and the failure of petitioner to demonstrate or even allege specific impropriety on the part of the county counsel's office or the Board, I would decline to adopt the blanket rule petitioner urges here and which the majority adopts. Indeed, in adopting the rule petitioner suggests, the majority rejects the settled legal presumptions of propriety explicit in *Withrow* and *Kloepfer* and utilizes instead a presumption of impropriety which is ameliorated by establishing a prophylactic rule to guarantee fairness.

Consistent with the analysis in *Withrow, supra,* 421 U.S. at page 58 [43 L.Ed.2d at pages 729-730], I would approach issues of the propriety of dual representation in administration hearings by allowing judges on a case by case basis to examine the particularities of local governmental agencies to assure fairness.

Here, in a letter to petitioner's counsel, the county counsel stated: "In practice, we endeavor to insulate the legal advisor of the Board from information and discussion with the attorneys acting in a representative capacity before the board. In fact, but for your inquiry and the necessity to respond to your request for recusal, I would not have become involved in this hearing matter until the date of the hearing." Although the possibility of raising this specific issue was known to him, petitioner's broad constitutional challenge did not allege inadequate screening procedures led to an unconstitutional risk of bias or conflict on the part of the Board. In the absence of such a challenge, I would assume adequate screening provisions are provided within the office of county counsel.

### III

I would respectfully suggest the premise adopted by the majority runs contrary to direct authority which concludes principles of fairness and due process are not necessarily violated when the county counsel's office represents a party before an administrative tribunal and also acts as the legal advisor to the tribunal. (*Rowen* v. *Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 633, 640-641 [174 Cal.Rptr. 185]; *Greer* v. *Board of Education* (1975) 47 Cal.App.3d 98, 119-120 [121 Cal.Rptr. 542]; *Ford* v. *Civil Service Commission* (1958) 161 Cal.App.2d 692, 697 [327 P.2d 148]; *Chosick* v. *Reilly* (1954) 125 Cal.App.2d 334, 337-338 [270 P.2d 547].) (Compare *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864, 870-871 [128 Cal.Rptr. 54] [impropriety exists where the same *individual* acts as adviser and advocate].) It is apparent existing authority is consistent with the *Withrow-Kloepfer* analysis: dual representation is permissible until in a given case *actual* bias or conflict is so intolerably high as to make such

dual representation impermissible. I find unpersuasive the majority's attempt to distinguish these authorities.

## IV

Because I conclude there is no inherent denial of due process in dual representation of the type at issue here, I agree the petition should be denied.

If petitioner again objects to the county counsel's dual role, the question before the lower court is whether *in this specific case* dual representation denies due process.

While the county counsel may be required *by the trial court* as part of a due process inquiry, to explain how it insulates its advisory function from its advocating function, once it has done so, the burden is then on petitioner to demonstrate the insulation is inadequate. Unlike the majority, I would not require the trial court presume that the dual representation is violative of due process.