Filed 4/7/26 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PENGFEI PHILIP CHI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>    Defendant and Respondent. | A172237<br><br>(Alameda County Super. Ct. No. 24CV067384)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

Pursuant to California Rules of Court, rule 8.264(c)(1), the opinion filed on March 24, 2026, shall be MODIFIED as follows:

1. On page 10, in the first full paragraph, the last sentence ("Having presented . . . unbiased.") is deleted and replaced with:

   Because Chi has presented no evidence of an unacceptable risk of bias, we must assume that the hearing officer could decide the case fairly.

2. On page 15, the first full paragraph is deleted and replaced with the following paragraph:

   Adjudicators need some latitude to do their jobs. It is part of the job of judging to control the proceedings, ask probing questions, and develop and express

1

opinions about the facts based on the evidence.  (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1111, disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151; *Today's Fresh Start*, *supra*, 57 Cal.4th at p. 230; *Andrews*, *supra*, 28 Cal.3d at pp. 795-796.)  Without running afoul of the due process clause, an adjudicator may express "skepticism" (*People v. Banks* (2014) 59 Cal.4th 1113, 1175) or ask questions that "rais[e] whatever concerns weigh[] most heavily" on her mind (*Today's Fresh Start*, at p. 230).  Vigorous questioning may simply reflect the adjudicator's effort to "afford[] the [litigant] the chance to allay those concerns." (*Ibid*.)  An adjudicator may find it necessary to reprimand or speak harshly to a disruptive or uncivil participant. (*Guerra*, at p. 1111.) Although adjudicators may sometimes err or display intemperance, such behavior, though regrettable, does not ordinarily violate the constitution.  (See *ibid*.; *Nieves*, *supra*, 11 Cal.5th at p. 499.)  The Legislature is free to impose stricter standards.  But the due process clause, together with the presumption against bias, establishes a floor that gives adjudicators considerable leeway to perform their duties.  Under the *Clarke* test, however, adjudicators will be constantly looking over their shoulders, afraid of doing or saying something that might be interpreted as unconstitutional advocacy.

The modifications make no change to the judgment.


BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.

*Chi v. Department of Motor Vehicles* (A172237)

2

Superior Court of Alameda County, No. 24CV067384, The Hon. Michael M. Markman, Judge.

Rodney Thomas Gould for Petitioner and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Supervising Assistant Attorney General, Austin J. Cattermole, Supervising Deputy Attorney General, and Edward Garcia, Jr., Deputy Attorney General, for Respondent.

Filed 3/24/26  (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PENGFEI PHILIP CHI,<br><br>    Petitioner and Appellant,<br><br>v.<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>    Respondent. | A172237<br><br>(Alameda County Super. Ct. No. 24CV067384) |

Pengfei Philip Chi appeals from the trial court's denial of his petition for a writ of mandate challenging the suspension of his driving privileges by the Department of Motor Vehicles.  He argues that the department's administrative hearing officer violated his due process rights by acting as a prosecutor rather than a neutral adjudicator.  We disagree and affirm.

Our Supreme Court has granted review in a similar case, *Romane v. Department of Motor Vehicles* (2025) 110 Cal.App.5th 1002, 1019, 1021, review granted August 13, 2025, S291093 (*Romane*).  *Romane* is part of a line of recent cases—all involving the department—that examine this same due process issue.  As we explain, we believe that some of these cases conflict with our Supreme Court's precedent by employing an appearance of bias standard for assessing an adjudicator's impartiality and by overlooking the presumption of impartiality that courts afford to adjudicators.

4

## BACKGROUND

### A.

By statute, a driver is deemed to have consented to a blood or breath test to determine the driver's blood alcohol content if the driver is arrested for driving under the influence of alcohol. (Veh. Code, § 23612, subd. (a)(1)(A).[1])  As relevant here, refusing a peace officer's request to submit to a test, in circumstances providing reasonable cause to believe the person was driving under the influence of alcohol, results in a one-year suspension of driving privileges.  (§ 13353, subd. (a); see also § 23612, subd. (a)(1)(D) [providing that the driver must be advised that failure to submit to chemical testing will result in administrative suspension of his or her driver's license for one year].)

After providing the driver with notice of the suspension (effective 30 days from the arrest date), the officer forwards to the department copies of the notice and the officer's sworn report.  (§ 23612, subds. (f), (g)(1); see also § 13380, subd. (a).)  The department conducts an automatic internal review of the report and any other accompanying evidence and will set aside the suspension if the evidence does not support it.  (§ 13557, subds. (a), (b)(2).)

The driver may also request an administrative hearing. (§ 13353, subd. (e); see also §§ 13558, 14100.)  The issues at the hearing are limited.  The hearing officer will sustain the suspension if there was reasonable cause to believe that the person was driving under the influence in violation of the law; the person was arrested or lawfully detained; the person refused chemical testing upon request by a peace officer; and the person had been advised of the consequences of refusing to submit to

---

[1] Undesignated statutory references are to the Vehicle Code.

5

testing. (§ 13557, subds. (b)(1)(A)-(D); see also § 13558, subd. (c)(1).)

In 2022, *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517 (*California DUI Lawyers*) held that the department's hearing structure violated the due process clause. At the time, the department defined the role of a hearing officer as " 'a trier of fact as well as an advocate for the department,' " directing the hearing officer to " '[a]ssist, defend, prepare and/or present [the department]'s case' " and to rule on "the admissibility of the documentation he or she offers as evidence as 'advocate for the [department]' in support of the [department's] position." (*California DUI Lawyers*, at p. 527.) The court held that this combination of advocacy and adjudicatory functions in an individual hearing officer created an unconstitutional risk of bias. (*Id*. at pp. 530-533.)

In response, the department changed its policy. Thus, at the time of the hearing in Chi's case, the department specified that the hearing officer acts only as a neutral trier of fact, does not represent or advocate for the department, and is not tasked with preparing the department's case. Hearing officers are instructed to introduce any relevant evidence received from law enforcement, ask clarifying questions if necessary, and rule on objections. Since 2022, all hearing officers are instructed on this policy and are trained not to advocate on behalf of the department when conducting a hearing.[2]

---

[2] Although our record does not contain a copy of the written policy, it contains a declaration by a department staff person summarizing the policy, the accuracy of which Chi does not dispute.

Pursuant to a department regulation that took effect July 1, 2024, a hearing officer is "not an advocate for the [d]epartment but is a neutral decision-maker." (See Cal. Code Regs., tit. 13, § 115.01, subd. (b)(1); see also *id*., § 115.01, subd. (b)(2).)

6

## B.

In March 2022, California Highway Patrol (CHP) officers stopped Chi's vehicle after they observed it swerving and traveling at over 100 miles per hour on Interstate 880. According to the arrest report, Chi's eyes were red and watery, he smelled like an alcoholic beverage, his speech was slurred, and he was swaying back and forth. Chi admitted to having drunk two beers. After he failed a series of field sobriety tests, an officer placed him under arrest for driving under the influence of alcohol. (See § 23152, subd. (a).) Subsequently, after an officer advised him that refusing to submit to a chemical test would result in the suspension of his driving privilege, Chi repeatedly refused to submit to further testing. The officer then served Chi with notice that his license would be suspended due to his refusal to take a chemical test.

At an administrative hearing in February 2024, the only participants were Chi, his counsel, and the department's hearing officer. Consistent with the policy adopted by the department in 2022, the hearing officer explained that she would be "acting as a neutral factfinder." She would "not act as an advocate for the [department] or [for] law enforcement." Over Chi's hearsay objections, the hearing officer moved the department's evidence into the record, including the CHP officer's sworn statement, the accompanying arrest report, and video camera footage from the arrest.

In response to his attorney's questions, Chi testified that English was not his native language and that, when he was speaking to the CHP officers, he "couldn't hear" due to background noise. He did not remember being advised that, if he refused to take a test, his driving privilege would be suspended. The hearing officer had just one "clarifying question": "At any point when you were having the conversation with the officer, did you communicate to the officer that you couldn't hear him well?"

Chi responded that he could not recall. His attorney argued that Chi could not hear or understand any admonition about the consequences of refusing to test.

Ultimately, the hearing officer sustained the suspension in a written decision. She found that Chi was advised of the consequences of refusing to submit to chemical testing and that he nonetheless refused to test.

In his petition for a writ of mandate, Chi argued that the administrative hearing violated his due process rights because the hearing officer acted as an advocate for the department. The trial court disagreed and denied the petition.

## DISCUSSION

### A.

Our Supreme Court's law on this issue is well developed. The due process clauses of both the federal and state constitutions require the state to afford a fair process before depriving someone of their property. (U.S. Const., 14th Amend., § 1; Cal. Const., art. 1, § 7, subd. (a); *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*); see also *Bell v. Burson* (1971) 402 U.S. 535, 539 [holding that a state may not take away a driver's license without providing due process].) Because the two clauses are "substantially overlapping," the court looks to the United States Supreme Court's precedents for guidance. (*Today's Fresh Start*, at p. 212.)

A fair process requires an impartial adjudicator. (*Today's Fresh Start, supra*, 57 Cal.4th at p. 212.) However, the due process standard is more limited than statutes and ethical rules that are designed to prevent bias or the appearance of bias. (See *People v. Freeman* (2010) 47 Cal.4th 993, 996 (*Freeman*); *People v. Cowan* (2010) 50 Cal.4th 401, 457 (*Cowan*); *Caperton v. A.T. Massey Coal Co.* (2009) 556 U.S. 868, 890 (*Caperton*).) Courts

8

should not routinely invoke the due process clause as a ground for disqualification. (*Freeman*, at p. 1005.) Due process establishes a constitutional floor, not a uniform standard, and it "operates only as a 'fail-safe' and only in the context of extreme facts." (*Id.* at pp. 1005-1006; *Bracy v. Gramley* (1997) 520 U.S. 899, 904.) While an appearance of bias may violate a statute (see, e.g., Gov. Code, § 11425.30, subd. (a)), it does not violate the due process clause. (*Freeman*, at pp. 996, 1005.)

The controlling principle for determining unconstitutional bias rests on the general concept that an adjudicator must remain disinterested in the outcome of the case. (See *People v. Nieves* (2021) 11 Cal.5th 404, 499 (*Nieves*); *Caperton*, *supra*, 556 U.S. at p. 878.) Examples of disqualifying interests include a financial interest in the outcome (*Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1024; see also *Tumey v. State of Ohio* (1927) 273 U.S. 510, 523); a personal bias against a party, such as a prejudice against women (*Catchpole v. Brannon* (1995) 36 Cal.App.4th 237, 249, 262; *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495, 1499-1502) or noncitizens (*Hernandez v. Paicius* (2003) 109 Cal.App.4th 452, 455); or a personal grudge against a party based on a history of conflict (*Nieves*, at p. 499).[3]

Unless an adjudicator has a financial interest, the adjudicator is presumed to be impartial, and the burden of establishing bias rests on the party that claims it. (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 219; *Withrow v. Larkin* (1975) 421 U.S. 35, 47 (*Withrow*).) This presumption may be overcome only by specific circumstances that demonstrate "a constitutionally

---

[3] In *Freeman*, *supra*, 47 Cal.4th at p. 1006, fn. 4, our Supreme Court cited *Catchpole*, *Iverson*, and *Hernandez* as examples of cases demonstrating actual bias, but the court disapproved of them to the extent they suggested that a mere appearance of bias is sufficient to violate due process.

9

intolerable possibility that [the decisionmaker] harbored an interest in the outcome" of the case. (*Nieves, supra,* 11 Cal.5th at p. 499; see also *Rippo v. Baker* (2017) 580 U.S. 285, 286-287; *Williams v. Pennsylvania* (2016) 579 U.S. 1, 8 (*Williams*).) The inquiry is objective—the question is whether there are circumstances that could tempt an average adjudicator to favor one side, based on a " ' "realistic appraisal of psychological tendencies and human weakness." ' " (*Cowan, supra,* 50 Cal.4th at p. 457.) Unless the party offers " 'specific evidence' " of such circumstances, demonstrating an unacceptable risk of bias, an adjudicator is presumed to be capable of judging the case fairly. (*Today's Fresh Start*, at pp. 221-222.)

Litigants have sometimes argued that the structure of an administrative hearing process poses an intolerable risk of bias. Although the requirement of a neutral adjudicator applies to administrative proceedings, the standard is more relaxed than in judicial proceedings. (*Today's Fresh Start, supra,* 57 Cal.4th at p. 214.) The constitution does not require agencies to use the adversarial trial model, which is often more resource-intensive and expensive than necessary for resolving administrative disputes. (*Ibid.*; see 2 Pierce, Administrative Law Treatise (7th ed. 2024), Separation of Functions, § 7.8, p. 1085.) Due process thus allows the government flexibility to combine investigator, prosecutor, and adjudicator functions within a single agency. (*Today's Fresh Start*, at p. 221; *Withrow, supra,* 421 U.S. at p. 53; *Sheldon v. S.E.C.* (11th Cir. 1995) 45 F.3d 1515, 1518 [" 'It is uniformly accepted that many agencies properly combine the functions of prosecutor, judge and jury' "].) In the seminal case *Withrow v. Larkin,* the high court explained that there is "[n]o single answer" and "the growth, variety, and complexity of the administrative processes have made any one solution highly unlikely." (*Withrow,* at p. 51.)

10

Courts have sometimes found due process violations where an agency combined *prosecutor* and adjudicator functions in ways that posed an unacceptable risk of bias. (See *Today's Fresh Start, supra*, 57 Cal.4th at pp. 223-224 [surveying cases].) When a prosecutor *is* the adjudicator, for example, a risk of bias stems from the fact that a single person sits in judgment of her own prosecution. (See *Williams, supra,* 579 U.S. at pp. 8-10; *In re Murchison* (1955) 349 U.S. 133, 137-138.) Similarly, when a prosecutor advises an adjudicator, there is a risk that the prosecutor will give the adjudicator advice that is skewed toward the prosecutor's position. (See *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1585.) But, in general, there is no magic formula. (See *Withrow, supra*, 421 U.S. at p. 51.) As our Supreme Court has noted, "[a]t the extreme, the Supreme Court has countenanced proceedings where a single individual may act as investigator, prosecutor, and decision maker" in limited circumstances. (*Today's Fresh Start*, at p. 221, citing *Goss v. Lopez* (1975) 419 U.S. 565, 581-584.)

When it comes to structures that combine *investigator* and adjudicator functions, our Supreme Court has consistently rejected due process challenges. (See, e.g., *Today's Fresh Start, supra*, 57 Cal.4th at pp. 220-221, 225-227; *Kloepfer v. Commission on Judicial Performance* (1989) 49 Cal.3d 826, 833-835; *Griggs v. Board of Trustees* (1964) 61 Cal.2d 93, 97-98.) Agencies may dispense with partisan advocates, leaving to the adjudicator the task of both developing the facts and making a final decision. (See *Today's Fresh Start*, at pp. 220-221, 223; *Richardson v. Perales* (1971) 402 U.S. 389, 410 (*Richardson*).) The combination of adjudicator and investigator functions is " 'inquisitorial rather than adversarial.' " (*Today's Fresh Start*, at pp. 220-221; see also *Withrow, supra*, 421 U.S. at p. 52.) In *Richardson*, for example, the high court rejected a separation-of-functions challenge to a federal Social Security proceeding in which the individual hearing examiner was "charged with

11

developing the facts" as well as adjudicating the applicant's benefits claim. (*Richardson*, at p. 410; see also *Withrow*, at pp. 46-55 [upholding state medical board that investigated and adjudicated medical license suspensions].)

Our standard of review is de novo. (See *Cardona v. Soto* (2024) 105 Cal.App.5th 141, 150.)

**B.**

Chi contends that his due process rights were violated because the department's hearing officer acted as a prosecutor by introducing evidence against him, then acted as an adjudicator when overruling his evidentiary objections and issuing a decision in his case. As discussed below, Chi frames the constitutional issue incorrectly. Properly framed, the question presented is whether the combination of functions poses an unacceptable risk of bias. It does not.

First, we reject the notion that the hearing officer functioned as a prosecutor or an advocate for the department. As explained, in 2022, following *California DUI Attorneys, supra,* 77 Cal.App.5th 517, the department changed its policy to require hearing officers to act as a neutral trier of fact, not as a department representative or advocate. The hearing officer may introduce relevant evidence, ask clarifying questions, and rule on objections, which are all tasks consistent with the role of a neutral fact-finder. This combination of investigation and factfinding roles is inquisitorial, rather than adversarial, and does not, by itself, offend due process. (See *Today's Fresh Start, supra,* 57 Cal.4th at pp. 220-221; *Withrow, supra*, 421 U.S. at pp. 54-55; *Richardson, supra,* 402 U.S. at p. 410.) Nor does the omission of a prosecutor "transmute the judge into a prosecutor" or violate due process. (*People v. Carlucci* (1979) 23 Cal.3d 249, 256 (*Carlucci*) [rejecting due process claim where a trial court judge called and questioned witnesses at a traffic infraction hearing in the absence of a prosecutor]; see also *Richardson*, at p.

12

410 [reasoning that a hearing examiner who develops the facts "does not act as counsel"]; *Today's Fresh Start*, at pp. 220-221 [rejecting claim that county board's advisory staff functioned as advocates when they investigated and recommended revocation of school charter].)

Second, and more importantly, Chi never addresses the correct legal standard. He never explains, even theoretically, how the particular combination of roles that he highlights—the hearing officer's introduction of relevant evidence and ruling on objections—presents an unacceptable risk of bias. (See *Nieves*, *supra*, 11 Cal.5th at p. 498.) Assigning both tasks to a neutral hearing officer does not incentivize the officer to favor the department. (See *Carlucci*, *supra*, 23 Cal.3d at p. 256.) Essentially, Chi is complaining that the administrative hearing does not follow the adversarial trial model, where the advocates introduce evidence and a judge rules on objections. That train left the station decades ago. (See *Withrow*, *supra*, 421 U.S. at pp. 47-55.) Having presented no evidence of an unacceptable risk of bias, Chi has failed to rebut the constitutional presumption that the hearing officer was unbiased. (See *Today's Fresh Start*, *supra*, 57 Cal.4th at p. 222; *Withrow*, at p. 47.)

## C.

Chi frames the constitutional issue differently. He claims that the hearing officer's *actions* at the hearing—specifically, again, moving documents into evidence, then overruling Chi's objections to them—created an unconstitutional *appearance* of bias. Ordinarily, we would summarily reject this argument. It is well settled that a mere appearance of bias does not violate the due process clause. (See *Freeman*, *supra*, 47 Cal.4th at p. 1005.) Chi's failure to present evidence of an unacceptable risk of bias should end the discussion.

But Chi points to a recent line of cases that make the issue more complicated. Our Supreme Court has granted review in one

13

of the cases, *Romane, supra*, 110 Cal.App.5th 1002, review granted August 13, 2025, S291093. As we shall explain, we think the case law has taken a wrong turn.

*California DUI Lawyers* held that the combination of advocacy and adjudication functions—under the department's former policy—presented an unacceptable risk of bias. (*California DUI Lawyers, supra*, 77 Cal.App.5th at pp. 530-533.) In a footnote, the court recognized that a combination of *investigation* and adjudication functions would be different: "[the department] may task the same person with both collecting and developing the evidence and rendering a final decision." (*Id.* at p. 533, fn. 5, citing *Today's Fresh Start, supra*, 57 Cal.4th at p. 220.) The court then added: "He or she must refrain, however, from *advocating* on behalf of the [department] as the [department policy] currently mandates (i.e., present the [department's] case and 'promote driver safety,' with no corresponding duty to present any evidence that would support the position of the driver at the hearing)." (*Ibid*.) Although this last point seems to focus on the favoritism mandated by the department's (then-current) policy, it also introduced, somewhat ambiguously, the notion that a hearing officer might *act* as an advocate despite a (hypothetical) policy that limits her role to investigating.

In *Knudsen v. Department of Motor Vehicles* (2024) 101 Cal.App.5th 186 (*Knudsen*), the court considered the case of a driver whose hearing took place under the same policy *California DUI Lawyers* held to be unconstitutional. (See *Knudsen*, at pp. 206, 208.) *Knudsen* recognized that, as *California DUI Lawyers* held, "the policy implemented by the [department] violated the due process right to an impartial adjudicator." (*Knudsen*, at p. 199.) *Knudsen* went on to say, however, that "in an actual case, it may be that a public hearing officer did not actually act as an advocate despite the [department's] stated policy." (*Id.* at p. 206.) As a result, the court said it would examine "the administrative

14

record and the revocation decision to see if the public hearing officer actually acted as both an adjudicator *and* an advocate, or merely acted as an adjudicator and a collector and developer of evidence." (*Id.* at p. 193.) After reviewing the record, the court categorized some of the hearing officer's actions as advocacy, including: "inaccurate characterizations of important testimony," questions that tended to "undermine," "discredit," and "mischaracterize" a defense expert's testimony, and a legal error that "significantly benefited" the department. (*Id.* at pp. 210-213 & fn. 13.) It concluded that the hearing violated the driver's due process rights because the hearing officer, who was directed by department policy to do so, acted as both an advocate and adjudicator. (*Id.* at pp. 212-213; see also *Kazelka v. Department of Motor Vehicles* (2025) 109 Cal.App.5th 1239, 1255-1256 [following *Knudsen* in a case involving a pre-*California DUI Lawyers* administrative hearing and finding no due process violation].)

Subsequently, two courts have applied *Knudsen's* approach to the cases of drivers whose hearings took place after the department cured its policy. (See *Clarke v. Gordon* (2024) 104 Cal.App.5th 1267, 1271, 1276 (*Clarke*); *Romane, supra,* 110 Cal.App.5th at pp. 1020.) The courts recognized the distinction between investigation and advocacy. (*Clarke,* at p. 1276; *Romane,* at p. 1013.) But, citing *Knudsen,* the courts assessed the hearing officer's behavior to determine whether he or she acted like an advocate. (See *Clarke,* at p. 1266; *Romane,* at p. 1016.) Thus, this new due process test turns on how the reviewing court categorizes, or labels, the hearing officer's actions—i.e., either advocacy or not advocacy.

*Clarke, supra,* 104 Cal.App.5th 1267, is a good example. At the outset of the driver's administrative hearing, the hearing officer stated that, in the wake of *California DUI Attorneys,* the department changed its policy to clarify that hearing officers

15

would not also serve as advocates. (*Id*. at p. 1271.) But *Clarke* examined the record and found that the hearing officer acted as an advocate by offering the department's exhibits into evidence, overruling the driver's objections, and "rigorously cross-examin[ing]" him. (*Id*. at p. 1277.) The court also expressed doubt that any combination of functions would be constitutional: "We are hard pressed to imagine how a single [department] employee might discharge multiple functions during [a department] hearing in a manner that will satisfy due process requirements." (*Id*. at p. 1277.)

Justice Delaney dissented. He agreed that the court must determine whether the hearing officer "acted as both an adjudicator and an advocate." (*Clarke*, *supra*, 104 Cal.App.5th at p. 1278 [dis. opn. of Delaney, J.].) But he believed that the hearing officer had acted as a factfinder. He noted that cases like *Today's Fresh Start* allow an individual hearing officer to marshal, identify, and present relevant evidence. (*Clarke,* at p. 1278.) He also concluded that the hearing officer's cross examination was "within her proper limited role as a fact finder" because it merely clarified the witness's contradictory testimony. (*Ibid*.)

*Romane* applied the same test but, on the facts, found no advocacy. (See *Romane*, *supra,* 110 Cal.App.5th at pp. 1016-1019.) Contrary to the *Clarke* majority, the court concluded that introducing documents routinely provided by law enforcement was consistent with collecting and developing evidence rather than advocating for the department. (*Romane*, at p. 1018.)

Respectfully, we believe that the *Clarke* approach contradicts our Supreme Court's precedent.

Under *Clarke*, the focus is on appearances rather than disqualifying interests. The court scrutinizes the adjudicator's actions and characterizes them as advocacy or not advocacy. If it looks like advocacy, the *implication* is that the adjudicator

16

appeared to favor the department. But the court never identifies, or analyzes evidence of, any circumstances that would tempt an average adjudicator to favor the department. (See *Cowan*, *supra*, 50 Cal.4th at p. 457.) The department instructs its hearing officers *not* to favor either side. The *Clarke* test effectively discards the presumption of "honesty and integrity in those serving as adjudicators." (*Withrow*, *supra*, 421 U.S. at p. 47.) And, as *Clarke* and *Romane* illustrate, it would expose almost any administrative hearing to judicial micromanagement, turning the due process clause into a universal disqualification standard rather than a fail-safe. (See *Freeman, supra*, 47 Cal.4th at p. 1005.)

This is not to suggest that the adjudicator's actions are irrelevant to unconstitutional bias claims. Theoretically, for example, an adjudicator's conduct might evince a personal bias against a driver. But that requires a disqualifying interest and extraordinary facts. (See *Nieves*, *supra*, 11 Cal.5th at pp. 486-499 [rejecting due process claim where the judge asked the defense expert "argumentative" questions, disparaged defense counsel, and demeaned defense witnesses; the court's conduct was "highly inappropriate" but "did not convey an interest in [the] defendant's conviction or sentence"].) Absent extraordinary facts, we are skeptical that a court can accurately detect favoritism of an unconstitutional magnitude from the way that an adjudicator examined a witness, much less from a routine task like introducing relevant documents into evidence. (Cf. *Andrews v. Agricultural Labor Relations Board* (1981) 28 Cal.3d 781, 796 (*Andrews*) [" 'total rejection of an opposed view cannot of itself impugn the integrity or competence of a trier of fact' "], quoting *NLRB v. Pittsburg S. S. Co.* (1949) 337 U.S. 656, 659; see also *People v. Farley* (2009) 46 Cal.4th 1053, 1110 [explaining that a trial judge's numerous erroneous rulings against a party do not establish judicial bias].)

17

Adjudicators need some latitude to do their jobs. It is part of the job of judging to control the proceedings, ask probing questions, and develop and express opinions about the facts based on the evidence. (See *People v. Guerra* (2006) 37 Cal.4th 1067, 1111, disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151; *Today's Fresh Start*, *supra*, 57 Cal.4th at p. 230; *Andrews*, *supra*, 28 Cal.3d at pp. 795-796.) Without running afoul of the due process clause, an adjudicator may express "skepticism" (*People v. Banks* (2014) 59 Cal.4th 1113, 1175) or ask questions that "rais[e] whatever concerns weigh[] most heavily" on her mind (*Today's Fresh Start*, at p. 230). Rather than showing bias, rigorous questioning may simply reflect the adjudicator's effort to "afford[] the [litigant] the chance to allay those concerns." (*Ibid*.) In response to inappropriate courtroom conduct, an adjudicator may find it necessary to reprimand or speak harshly to a participant in the proceedings, without departing from her role as an impartial adjudicator. (*Guerra*, at p. 1111.) This is ordinary behavior by adjudicators, not the sort of extreme behavior that may indicate unconstitutional bias. (See *Freeman*, *supra*, 47 Cal.4th at p. 1005.) Under the *Clarke* test, however, adjudicators will be constantly looking over their shoulders, afraid of doing or saying something that might be interpreted as advocacy.

In sum, the *Clarke* approach invites courts to use the due process clause routinely to regulate administrative hearings based on appearances rather than a more rigorous appraisal of risks and disqualifying interests that our Supreme Court has long required.

## DISPOSITION

The judgment is affirmed.

18

                                                          BURNS, J.

WE CONCUR:


JACKSON, P.J.
CHOU, J.

*Chi v. Department of Motor Vehicles* (A172237)

Superior Court of Alameda County, No. 24CV067384, The Hon. Michael M. Markman, Judge.

Rodney Thomas Gould for Petitioner and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Supervising Assistant Attorney General, Austin J. Cattermole, Supervising Deputy Attorney General, and Edward Garcia, Jr., Deputy Attorney General, for Respondent.